UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES L. LEE,

    Plaintiff,

vs.                                          Case No. 3:04-cv-364-J-20MCR

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER

**THIS CAUSE** is before the Court on Plaintiff James L. Lee's ("Lee") Complaint (Doc. No. 1) seeking judicial review of an administrative decision denying his claim for Social Security benefits.[1] The Court has thoroughly reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED and REMANDED** for further findings consistent with this Memorandum Opinion and Order.

I.    **Procedural History**

Lee protectively filed an application for Disability Insurance Benefits ("DIB") on October 17, 2000, alleging he became unable to work on April 8, 1998. (Tr. 59). The Social Security Administration ("SSA") denied Lee's application initially and upon reconsideration. (Tr. 46-51). Lee filed a timely request for a hearing on the matter asserting that he was unable to perform substantial gainful work activity. (Tr. 52-53).

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. No. 9.

His request was granted and a hearing was conducted by an Administrative Law Judge ("ALJ") on March 5, 2003. (Tr. 54, 315).

The ALJ rendered a decision on March 17, 2003, concluding Lee was not disabled and therefore not entitled to a period of DIB under Sections 216(i) and 223 of the Social Security Act. (Tr. 15-23). Lee subsequently filed a timely request for review by the Appeals Council, which was denied on March 22, 2004. (Tr. 4-6). As a result, pursuant to 20 C.F.R. §§ 404.981, 416.1481 and 422.210, the ALJ's decision was the final decision of the Commissioner. Lee subsequently filed a timely Complaint (Doc. No. 1) in the United States District Court on May 17, 2004, seeking judicial review of the Commissioner's final decision.

## II. Nature of Plaintiff's Disability Claim

### A. Basis of Claimed Disability

Lee claims to be disabled since April 8, 1998 due to bilateral carpal tunnel syndrome, a history of bilateral median nerve entrapment, right middle trigger finger, chronic pain syndrome, cervicalgia (neck pain), left shoulder and lower back pain, and major depressive disorder. (Tr. 16).[2] In his memorandum in support of the Complaint, Lee presents three issues for the Court's review. See Doc. No. 13. First, Lee contends the ALJ erred by failing to allow his counsel to fully cross-examine the Vocational Expert ("VE"). Lee asserts the ALJ's interference with his counsel's cross-examination of the VE prevented the record from clearly reflecting a complete hypothetical which

---

[2]Lee filed a workers' compensation claim alleging his injuries were caused by his past work. The claim was subsequently settled and Lee was awarded $165,000 as net proceeds.

should have directed the VE to opine that there were no jobs in the national economy available to Lee.  Lee further asserts the ALJ's conduct amounted to an unconstitutional deprivation of his right to due process.

Second, Lee contends the ALJ erred by rejecting his subjective complaints of pain, particularly in light of substantial medical evidence supporting his diagnosis of chronic pain syndrome.  Third, in rejecting his subjective testimony of pain, Lee further contends the ALJ failed to adequately articulate specific credibility findings.

### B.    Summary of Evidence Before the ALJ

Plaintiff was born September 6, 1946.  At the time the ALJ issued his March 17, 2003 decision, Lee was fifty-six (56) years of age.  Lee possesses an eleventh grade education.  Lee's past work experience is primarily comprised of coordinating transportation and setting up equipment in the motion picture industry.  (Tr. 324-325).  The nature of Lee's past work included completing paperwork, frequent driving, lifting, carrying, walking, standing and occasional sitting.  (Tr. 326-329).  Lee's past work required exertional levels ranging from light to heavy.  As a result of numbness and tingling in both hands as well as an occasional burning sensation in both elbows, Lee was initially examined by George G. Fuessner, M.D., P.A. ("Dr. Fuessner") on August 4, 1998.  (Tr. 105).

Based upon his initial examination, Dr. Fuessner discovered Lee had a positive Tinel's sign[3] at the right wrist associated with a reduction in wrist strength and sensory distribution.  Additionally, an electromyogram revealed Lee suffered median nerve

---

[3]Tinel's sign is an examination test used to detect an irritated nerve.

entrapment in his right wrist. As a result, Dr. Fuessner prescribed bilateral wrist splints along with Feldene. Further tests revealed Lee also suffered moderately severe median nerve entrapment in his left wrist. Dr. Fuessner prescribed Darvocet and advised Lee to avoid all activities which would aggravate his condition.

Lee began treatment with Owen Osborne, M.D. ("Dr. Osborne") at the Ramadan Hand Institute on September 11, 1998. At that time, Lee was diagnosed with bilateral carpal tunnel syndrome, right middle trigger finger and possible bilateral radial nerve entrapment. Based upon his observations, Dr. Osborne noted Lee's "grips are week [sic] and his hands are clumsy." (Tr. 169). Dr. Osborne classified Lee's condition as a temporary impairment and opined that Lee was able to work with no restrictions. (Tr. 165).

Subsequently on September 18, 1998, during a follow-up visit, Dr. Osborne recommended Lee undergo surgery, specifically "right median nerve release at the carpal tunnel, tenosynovectomy of the flexor tendons, possible partial resection of lumbrical muscles" and "release of right middle trigger finger." (Tr. 162). Additionally, Dr. Osborne opined that Lee was able to work, but restricted to light duty. (Tr. 164). Lee underwent the recommended surgery which was performed by Dr. Osborne on September 28, 1998. (Tr. 151). In sum, Dr. Osborne's progress notes dated September 29, 1998 through January 5, 1999, indicate Lee underwent physical therapy including grip strengthening exercises; Lee however continued to experience tenderness in his right middle finger. (Tr. 129-151). During that time, Dr. Osborne consistently opined that Lee was unable to return to work due to his recovery from the

surgery and the continued condition of his middle finger. (Tr. 130, 132, 135, 138, 144, 150).

As a result of the continued pain in his middle finger, on January 12, 1999, Dr. Osborne performed a closed capsulotomy proximointerphalangeal joint on Lee's right middle finger. (Tr. 127, 128). Lee was prescribed Percocet for pain, advised to exercise the finger as much as possible, and instructed to use cold compresses over the next 24-48 hours. (Tr. 128). On January 13, 1999, in response to an inquiry by the workers' compensation insurance provider, Dr. Osborne stated that Lee was able to return to light duty work at anytime, provided the work did not include repetitive motions. (Tr. 126). On January 26, 1999, however, Dr. Osborne again opined that Lee was unable to return to work. (Tr. 125). Subsequently on February 23, 1999, Dr. Osborne noted Lee continued to experience tightness in his middle finger and therefore recommended that Lee continue exercising the finger to include intrinsic stretching. Additionally, Dr. Osborne stated Lee was able to return to his normal work effective March 1, 1999.

During a subsequent follow-up examination, on March 30, 1999, Dr. Osborne noted Lee continued to experience a flexion deformity in his middle finger as well as pain, numbness and tingling in both hands. (Tr. 116). Dr. Osborne reclassified Lee's condition as a permanent impairment and stated Lee was able to work with no restrictions. (Tr. 118). On October 18, 1999,[4] Dr. Osborne completed a work status

---

[4]Based upon review of the record, it appears Dr. Osborne completed a work status form for Lee on October 1, 1999. In doing so however he failed to indicate when Lee could return to work as well as the
(continued...)

form stating Lee was able to perform light work for eight (8) hours per day; alternating between sitting and standing/walking every four hours. (Tr. 113). The form further stated Lee could occasionally: (1) carry, lift, push or pull 10-20 pounds and (2) drive equipment. Lee could not: (1) perform work involving repetitive hand actions such as simple grasping or fine manipulation; (2) climb ladders; or (3) reach above shoulder level.

In May 1999, Lee was referred to Shands Clinic at Hampton Oaks for a second-opinion regarding his condition and treatment. There, Lee was treated by Paul C. Dell, M.D. ("Dr. Dell"), a chief hand surgeon. (Tr. 257-271). Based upon his examination and diagnostic testing, Dr. Dell found Lee suffered bilateral carpal tunnel and median nerve symptoms as well as a partial rotator cuff tear in his left shoulder. (Tr. 257- 270). During his treatment with Dr. Dell, Lee was further diagnosed with cervical, neck and back pain and cubital tunnel syndrome. (Tr. 227-270). Dr. Dell opined that Lee could return to work on December 6, 1999, so long as he avoided overhead activities requiring use of his left upper extremity. (Tr. 257).

The record indicates Lee continued physical therapy for his hands and shoulder through December 18, 2000. (Tr. 232). As a result, he experienced an increase in strength and function of his right hand as well as his shoulder. (Tr. 111, 232). Lee also continued to experience pain in both hands and edema in his right middle finger as well as pain in his shoulder, neck and back. (Tr. 108, 227).

---

(...continued)
number of hours during a 8-hour work day Lee could stand, sit and/or walk. (Tr. 114).

On January 8, 2001, as part of the Florida Department of Labor and Employment Security's disability determination, Lee was examined by Lance I. Chodosh, M.D. ("Dr. Chodosh"), a family and occupational medicine practitioner. Based upon his review of Lee's medical history, Dr. Chodosh noted Lee underwent a nerve conduction study which revealed "mostly left-sided problems with median nerve transmission, and borderline slowing of left ulnar nerve." (Tr. 198). Dr. Chodosh further noted that a separate orthopedic evaluation revealed Lee suffered a partial rotator cuff tear in his left shoulder. Id.

In evaluating Lee's functional status, Dr. Chodosh stated the following:

> He is capable of all aspects of self care and activities of daily living. Walking is limited to two blocks, standing to thirty minutes by back pain. He must change positions frequently when sitting because of pain. He is able to bend somewhat, but not repetitively, has difficulty straightening from bent posture. He can not [sic] squat and rise well. He can lift only minimal weights. He has been given medical restrictions of lifting ten pounds with the right hand, five pounds with the left hand, but reports normal dexterity. He is able to drive, limited by discomfort. His vision is fair. He reports poor hearing, chronic tinnitus. His speech is normal.

(Tr. 196). Dr. Chodosh opined Lee experienced chronic pain in various areas, however, found no significant objective evidence which suggested Lee suffered a physical impairment. (Tr. 199). Dr. Chodosh further opined Lee exhibited significant signs of emotional distress and suggested a separate psychological evaluation. Id.

Lee subsequently underwent a psychological evaluation on January 29, 2001, conducted by Robert B. David, Ph.d. ("Dr. David"), a licensed psychologist. (Tr. 210). Dr. David opined the results of Lee's examination were consistent with a significant

mood disorder originating in chronic pain and an adverse change in economic circumstance. (Tr. 212). Dr. David further opined that Lee's mood disorder was a significant contributor to Lee's inability to maintain gainful employment. Id. Additionally, Dr. David opined Lee met the criteria for a "DSM-IV classification of Major Depressive Disorder, Recurrent, Severe With Psychotic Features." Id.

In subsequent progress notes from the Shands Clinic at Hampton Oaks, on March 26, 2001, Debbie M. Rafanan, P.A., stated that as a result of Lee's diagnoses of cervical, neck and back pain and cubital tunnel syndrome, Lee had not attained maximum medical improvement. (Tr. 227). She further noted that Lee required surgery to transpose the ulnar nerve in his left hand pending further evaluation of his neck and back pain. Id.

On May 15, 2001, Oscar De Paz, M.D. ("Dr. De Paz"), of Rehabilitative Medicine Associates, P.A., examined Lee and opined that Lee could perform light work with breaks as needed. (Tr. 274). He suggested that Lee perform no heavy lifting and no repetitive bending, stooping, squatting or overhead activities. Id. Lee was subsequently treated by Phillip K. Springer, M.D. ("Dr. Springer") of Springer Group, P.A., a pain management center. (Tr. 305-314). Lee's treatment included psychotherapy and medication management. (Tr. 308). Based upon his initial consultation with Lee, Dr. Springer noted that Lee was disabled. (Tr. 306, 308).

### C. Summary of the ALJ's Decision

In evaluating a claim of disability, the ALJ must follow five steps. See 20 C.F.R. sections 404.1520, 416.920. First, if a claimant is working at a substantial gainful

activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

Here, at step one, the ALJ found Lee had not engaged in substantial gainful activity since April 8, 1998, his alleged onset date. (Tr. 22). The ALJ noted that Lee has "a history of bilateral carpal tunnel syndrome, a history of median nerve entrapment bilaterally, right middle trigger finger, a history of hand surgery, a history of right hand carpal tunnel release, chronic pain syndrome, cervicalgia, left shoulder pain, low back pain, and major depressive disorder." (Tr. 20). Accordingly, at step two, the ALJ found Lee possesses an impairment or a combination of impairments considered "severe" within the meaning of the Regulations. (Tr. 22).

At step three, the ALJ found Lee's medically determinable impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Notably, the listings for mental disorders are arranged in eight diagnostic categories. The criteria in paragraphs B and C of the listings for mental disorders

describe limitations in functional areas deemed necessary to work. In evaluating the severity of Lee's major depressive disorder under paragraphs B and C, the ALJ concluded the evidence presented failed to show the impairment met or medically equaled a listed mental impairment. (Tr. 20)

At step four, the ALJ considered whether Lee's impairments prevent him from performing his past relevant work. Based upon his review of the evidence presented, the ALJ found Lee retains the residual functional capacity ("RFC") to perform light work. (Tr. 19). Specifically, the ALJ determined Lee could "sit and stand up to 6 hours each in an eight hour workday, lift up to 20 pounds, without climbing or working at unprotected heights, with no repetitive bending, stooping, squatting, or overhead activities, without continuous pushing or pulling." (Tr. 23).

In making the RFC determination, the ALJ found Lee's allegations of pain and other limitations not fully credible to the extent they precluded Lee from performing all types of work. (Tr. 19). The ALJ noted that, although Lee stopped working on April 8, 1998, he did not seek medical attention until August 1998. The ALJ further noted that Lee testified he stopped working on April 8, 1998, only because the show on which he was working concluded on that specific date. (Tr. 19, 329-330). According to Lee, had the show continued beyond April 8, 1998, he would have tried his best to continue working until the show actually ended. (Tr. 331). Additionally, the ALJ noted the medical evidence presented indicated that Lee was capable of performing light duty work. (Tr. 19).

Because Lee's past relevant work did not fall within any specific title listed in the Dictionary of Occupational Titles, the ALJ relied on the VE's assessment and found Lee's past relevant work is best characterized as (1) an operations manager; (2) a material handler; (3) a truck driver, and (4) a driver. (Tr. 21).[5] The ALJ concluded Lee's RFC allowed him to work as an operations manager, but precluded him from performing other aspects of his past relevant work. (Tr. 22).

At step five, the ALJ found Lee's impairments did not prevent him from performing semi-skilled, light duty work existing in the national economy. (Tr. 23). In making the finding, the ALJ again relied on the VE's assessment. In his direct examination of the VE, the ALJ posed the following hypothetical:

> Consider age, education, past relevant work experience. Assume that in an eight hour day, [he] can sit and stand up to six hours each, lift up to 20 pounds, cannot work at heights, unprotected heights and who would be precluded from doing jobs that require repetitive, continuous standing, stooping, squatting or overhead activities or the type of work whether he would be continuously reaching or pulling and [pushing].

(Tr. 379). The VE testified that, based the factors posed, a person could perform semi-skilled, light exertional work in the motor vehicle transportation industry. (Tr. 378-381). In response to the ALJ's additional hypothetical questions, the VE further testified that, even if a person were restricted to lifting no more than ten pounds and experienced mild to moderate pain, he could still perform light, sedentary work in the transportation industry. (Tr. 382-383).

---

[5] According to the VE's testimony, an operations manager performs skilled, light exertion work activities and a truck driver performs semi-skilled, heavy exertion work activities. (Tr. 375-378). Typically other drivers perform semi-skilled, medium exertion work activities. Id.

On cross-examination, Lee's counsel asked the VE whether a person capable of performing light work, who as a result of psychological problems persistently reported to work late, could maintain gainful employment. Finding no evidence in the record to support counsel's question, the ALJ disallowed it. (Tr. 383-384). Lee's counsel then asked the following:

> [U]sing the same physical hypothetical [as first posed by the ALJ], if the person, on a regular basis over the work week was off task dealing with pain concerns so that they were only putting in 45 to 50 minutes of actual work per hour and dealing with their own pain concerns for the other 10 to 15 minutes per hour, could they maintain employment in any of these jobs that you've talked about?

(Tr. 384-387). The ALJ again advised Lee's counsel that he would not allow the question as posed because it was not supported by the evidence presented.

Based upon his findings at steps one through five of the sequential evaluation, the ALJ concluded Lee was not disabled as defined by the Social Security Act and therefore not entitled to a period of DIB.

III.  Analysis

A. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing* Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Due Process

Lee initially argues that the ALJ's failure to allow a full cross-examination of the VE constituted a violation of his due process rights.  Specifically, Lee contends that on direct examination of the VE, the ALJ failed to pose a complete hypothetical.  Lee further contends that, by interfering during the cross examination, the ALJ precluded his counsel from posing a complete hypothetical, including all his limitations and restrictions.

Based upon the Court's review of the record, it is abundantly clear that, during the hearing, the ALJ and Lee's counsel frequently disagreed as to the questions posed

to both Lee and the VE. Although the contention displayed is regrettable, the issue presented here is whether, in conducting the hearing, the ALJ's actions constituted a violation of Lee's right to due process.

Due process guarantees Social Security claimants the right to a full and fair hearing. See Flatford v. Chater, 93 F.3d 1296 (6th Cir. 1996) (discussing Demenech v. Secretary of Health and Human Services, 913 F.3d 882 (11th Cir. 1990)). As part of that right, claimants are entitled to an opportunity to cross-examine witnesses. Here, the ALJ granted Lee that opportunity. The record reflects that in doing so, the ALJ exercised his discretion by not allowing or limiting certain hypothetical questions posed by Lee's counsel. As a basis for not allowing the questions, the ALJ determined they were inaccurate and not supported by the evidence presented. Based upon its review of the record, particularly the hypothetical questions posed by Lee's counsel, the Court finds the ALJ did not abuse his discretion in limiting cross examination of the VE. The Court further finds the ALJ's actions did not constitute a violation of Lee's due process rights.

The Court however is concerned regarding the hypothetical questions posed by the ALJ. It appears the ALJ relied on the VE's testimony in response to hypothetical questions which did not provide a complete and accurate reflection of Lee's limitations, specifically his major depressive disorder. Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985) (*quoting* Brenam v.

Harris, 621 F.2d 688, 690 (5th Cir. 1980)). A hypothetical however need not include impairments alleged, but properly rejected by the ALJ. See McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

Here, although the ALJ found that Lee's major depressive disorder did not meet or medically equal a listed mental impairment, based upon review of the record, the Court is unable to determine whether the ALJ rejected the impairment, found that it had no affect on Lee's ability to work or simply failed to incorporate the limitation into the hypothetical questions posed to the VE. Accordingly, on remand, the ALJ is directed to clarify the ambiguities surrounding this issue.

### C. The Pain Standard and Credibility

Next, Lee argues the ALJ erred by rejecting his subjective complaints of pain, particularly in light of substantial medical evidence supporting his diagnosis of chronic pain syndrome. Lee further argues, in rejecting his subjective testimony of pain, the ALJ failed to adequately articulate specific credibility findings.

Pain is a non-exertional impairment. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the

severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560, *quoting* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

In his decision, the ALJ mentioned the requirement that he consider symptoms, including pain, and the extent to which those symptoms are consistent with objective medical and other evidence, pursuant to 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-7p. The ALJ however did not cite the Eleventh Circuit "pain standard", *see* Holt, 921 F.2d at 1223, nor is it apparent from his decision that he

properly applied the "pain standard" as outlined by case law, the Regulations or SSR 96-7p.

The Court notes, the first prong of the pain standard–evidence of an underlying medical condition–is implicit in the ALJ's finding that Lee suffered severe impairments. The ALJ therefore obviously determined Lee possessed a medical condition that could give rise to the alleged symptoms; otherwise, the ALJ would not have been required to assess the credibility of Lee's alleged complaints. It is also obvious that the ALJ found some, but not all of Lee's testimony credible. However, based upon its review, the Court is unable to determine which of Lee's statements the ALJ found to be credible and which statements he did not.

Furthermore, 20 C.F.R. § § 404.1529(c), 416.929(c) and SSR 96-7p recognize that a claimant's statements regarding symptoms often suggest a greater level of impairment than can be shown solely by objective medical evidence. In such cases, when assessing the credibility of an claimant's statements, the ALJ is required to consider the objective medical evidence as well as the following factors:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

>    6.   Any measure other than treatment the individual uses or has used to relieve pain or other symptoms;
>
>    7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; 20 C.F.R. §§ 404.1529 (c), 416.929(c).

Lee testified that he stopped working on April 8, 1998, because the show on which he was working at the time concluded. Lee further testified that, because he made a commitment, had the show continued beyond April 8, 1998, he would have tried his best to complete the job. Additionally, Lee testified he did not believe he could perform light duty work. Regarding his physical limitations, Lee testified the pain in his back prevented him from repeated bending and squatting. He further testified that he could stand or sit for an hour however experienced pain when doing so. Although Lee testified that he could lift up to 20 pounds with both hands, he subsequently testified the pain in his shoulder and left side sometimes prevented him from lifting objects such as a quart of milk.

The ALJ made little assessment of Lee's allegations of pain; instead, the ALJ acknowledged that "if the show would not have been over he would have continued working." (Tr. 19). Without noting the obvious inconsistencies in their opinions as to when Lee could return to work and under what limitations, the ALJ further acknowledged that all of the treating physicians opined Lee could return to light duty work. (Tr. 19).

The ALJ discredited Lee's testimony to the extent that he was precluded from performing all types of work. The ALJ therefore impliedly concluded Lee's pain was not

-18-

severe enough to inhibit his ability to work, and, as such, discredited his allegations of pain. In doing so, it appears the ALJ determined Lee's statements regarding his symptoms suggested a level of impairment greater than that supported by the objective medical evidence. As such, the ALJ should have taken into consideration the factors outlined in SSR 96-7p in making his credibility determination.

If the ALJ did in fact consider the factors, it is not apparent from the decision. While at least one of the factors is mentioned, Lee's daily activities, there is no indication of the weight the ALJ accorded to the factor. Other factors listed in SSR 96-7p such as the effectiveness, dosage, and side effects of Lee's medications are completely absent from the decision.

Accordingly, on remand, the ALJ is directed to reconsider Lee's allegations of pain subject to the aforementioned standards of the Eleventh Circuit and the requirements of SSR 96-7p. In doing so, the ALJ is reminded that he must state the weight accorded to each item of impairment evidence and the reasons for accepting or rejecting such evidence. Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing Gibson v. Heckler, 779 F.2d 619 (11th Cir. 1986)).

IV. Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, and to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 25th day of August, 2005.

*Monte C. Richardson*
MONTE C. RICHARDSON
United States Magistrate Judge

Copies to:

Counsel of Record
Any Unrepresented Party